# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ANDREW HACKETT,

    Plaintiff,

v.                               Case No: 8:15-cv-1971-T-30JSS

ST. JUDE MEDICAL S.C., INC.,

    Defendant.

## ORDER

THIS CAUSE comes before the Court on Defendant's Motion to Dismiss and Alternatively Motion to Transfer (Dkt. #4), Plaintiff's Response in Opposition (Dkt. #8), and Defendant's Reply (Dkt. #11).

Plaintiff Andrew Hackett asserts claims against Defendant St. Jude Medical S.C., Inc., for employment discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, and the Florida Civil Rights Act, Fla. Stat. §§ 760.01-760.11. (Dkt. 2, at 3-4). St. Jude moves to dismiss or transfer this action on the grounds that a forum-selection clause between the parties requires Hackett to litigate his claims only in Minnesota. (Dkt. 4, Ex. 1 ¶ 9). The Court has reviewed the parties' filings and their exhibits and the relevant law. Because Hackett's claims are covered by a valid forum-selection clause that Hackett has failed to show is unreasonable, the Court concludes that the motion should be granted to the extent that it seeks transfer to the United States District Court for the District of Minnesota.

## FACTUAL BACKGROUND

Hackett entered into an employment contract with St. Jude on March, 13, 1999. On the first line, that contract identifies the parties as "Andrew D. Hackett" and "St. Jude Medical S.C., Inc. - Daig Division" (Dkt. #4, Ex. 1); the contract then notes that St. Jude will thereafter be referred to as "Daig." (Id.) On page three of the four-page contract, a forum-selection clause reads as follows:

> 9.  <u>Consent to Jurisdiction, Service of Process, and Venue.</u> [Hackett] agrees that any legal action proceeding of any kind relating to this Agreement or otherwise arising in any way out of [Hackett's] employment relationship with Daig will be brought and venued only in the District Court of Hennepin County, State of Minnesota, or in the United States District Court for the District of Minnesota. [Hackett] also expressly consents to the exclusive jurisdiction of such courts . . . .

(Id. at ¶ 8). The contract also contains a provision on successors and assigns, which states, "The benefits and obligations of this Agreement shall inure to the successors and assigns of Daig, to any person or entity which purchases substantially all of the assets of Daig, and to any subsidiary, affiliated corporation, or operating division of any of the previously described entities." (Id. at ¶ 7).

Hackett worked for St. Jude as a Cardiovascular Sales Representative. In 2008, he and St. Jude entered into an amendment to their 1999 employment contract. (Dkt. 4, Ex. 1).That amendment, a "Product Line Extension Addendum" between "Andrew D. Hackett" and "St. Jude Medical S.C., Inc.," added another line of products to St. Jude's sales catalog and set forth commission rates for the sale of those products. (Id.). It otherwise stated that "[a]ll other provisions of the Employment Agreement remain unchanged." (Id.).

Hackett continued his employment with St. Jude until his termination in 2014. On July 28, 2015, Hackett filed this action in the Circuit Court of the Sixth Judicial Circuit, in and for Pinellas County, Florida, alleging unlawful employment discrimination. (Dkt. 2, at 3-4). Hackett specifically alleges that he was fired in retaliation for having participated in a St. Jude Human Resources investigation of his supervisor. On August 24, St. Jude filed its notice of removal to this Court (Dkt. 2) and now asks the Court to dismiss Hackett's complaint or transfer it in accordance with the employment contract's forum-selection clause.

Hackett opposes and asks the Court to let the action proceed in the Middle District of Florida. Hackett argues that the employment contract cited by St. Jude does not reflect a meeting of the minds and that the forum-selection clause within the contract is therefore unenforceable. Hackett cites to the following facts:

1)  That the forum-selection clause in the contract refers not to St. Jude, but to Hackett's "employment relationship with **Diag** [sic]" (Dkt. 8, at 2) (Hackett's emphasis); Daig, Hackett asserts, dissolved years ago. (Id.).

2)  That the 2008 contract amendment was between Hackett and St. Jude, with no reference to Daig. (Id.).

3)  That the amendment, which Hackett signed on March 16, 2008, refers to an original "Employment Agreement" also dated March 16, 2008, not March 13, 1999, thus raising the possibility that yet a third contract exists between the parties.

(Id. at 2-3). Taken together, Hackett argues, these facts "fail to show an intent between the [] parties to litigate in a foreign court." (Id. at 5).

3

In its reply, St. Jude points out that the 1999 employment contract was in fact between Hackett and "St. Jude Medical S.C., Inc. - Daig Division," to which the contract assigns, for brevity's sake, the shorter "Daig." It further notes that contract's Paragraph seven, on "Successors and Assigns." St. Jude takes the position that this provision would encompass St. Jude even if, for argument's sake, St. Jude had not been a party to the 1999 contract (an argument St. Jude does not concede).

As to the contract amendment and its reference to an employment agreement entered into on the same date the amendment was signed, St. Jude claims that this was nothing but a scrivener's error—specifically, Hackett's error. St. Jude claims that he completed this fill-in-the-blank section of the amendment and mistakenly wrote the date that he signed the amendment, March 16, 2008, both on his signature line and on this blank section, where he should have written March 13, 1999, the date of the original contract. In any event, St. Jude asserts, the error is immaterial: the amendment relates solely to a new product line and has no impact on the validity of the forum selection clause in the original employment contract. To St. Jude, that original contract of March 1999 reflects a meeting of the minds that was never amended and should not be invalidated for any purported lack of clarity. The cause is now ripe for the Court's review.

## DISCUSSION

Under 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought" when it is convenient for the parties and witnesses, or "in the interest of justice." But when the parties to litigation have agreed to a valid forum-selection clause, "a district court should ordinarily transfer the case

4

to the forum specified in that clause." *Atlantic Marine Contr. Co. v. U.S. Dist. Court*, --- U.S. ---, 134 S.Ct. 568, 581, 187 L.Ed.2d 487 (2013). The transfer, after all, "protects [the parties'] legitimate expectations and furthers vital interests of the justice system." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). Only under extraordinary circumstances should this preference in favor of the contracted-for forum be disturbed. *See id*. at 28.

In fact, in the Eleventh Circuit, a forum-selection clause will only be invalidated in four scenarios: 1) when its formation was induced by fraud or overreaching; 2) when its enforcement would deprive a party of his day in court because of inconvenience or unfairness; 3) when its choice of law would deprive the plaintiff of a remedy; or 4) when its enforcement would contravene a strong public policy. *Krenkel v. Kerzner Int'l Hotels, Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (citing *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296 (11th Cir. 1998)). And the presence of a forum-selection clause will shift the burden of persuasion from the movant to the opponent of transfer. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). This is because the movant is not attempting to limit the plaintiff's right to choose its forum but simply "trying to enforce the forum that the plaintiff had already chosen: the contractual venue." *Id*.

But forum-selection clauses are provisions within a contract, *see P&S Business Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003), so this analysis "presupposes a contractually valid forum-selection clause." *Atlantic Marine Contr. Co.*, at 581 n. 5, 134 S.Ct. 568. Courts being asked to enforce a forum-selection clause must first

5

resolve the question of whether the parties entered into a valid contract. *See id*; *see also Diverse Elements, Inc. v. Ecommerce, Inc.*, 5 F.Supp.3d 1378, 1381 (S.D. Fla. 2014).

This is the question Hackett's motion raises. He argues that his chosen forum should prevail because his employment agreement with St. Jude "does not reflect a clear and definite meeting between the parties." (Dkt. 8, ¶4).

The Court disagrees. Employment contracts, and the clauses within them, are governed by "ordinary principles of contract law." *M&G Polymers USA, LLC v. Tackett*, --- U.S. ---, 135 S.Ct. 926, 190 L.Ed.2d 809 (2015); *see In re Ricoh Corp.*, 870 F.2d at 573-74. A contract is "a promise or set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." *Kaloe Shipping Co. Ltd. v. Goltens Service Co., Inc.*, 315 Fed.Appx. 877, 881 (11th Cir. 2009) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 1 (1981)). When interpreting the provisions within an employment contract, "as with any contract, the parties' intentions control." *M&G Polymers USA*, 135 S.Ct. at 933 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682, 130 S.Ct. 1578, 176 L.Ed.2d 605 (2010)). The record here demonstrates that Hackett entered into a valid employment contract with St. Jude in March of 1999. The contract clearly identifies the parties as "Andrew D. Hackett" and "St. Jude Medical S.C., Inc. - Daig Division"—not merely "Daig," as Hackett alleges. (Dkt. 4, Ex. 1; Dkt. 8, p. 2). Adopting Hackett's reading of his contract would not only deny the "clear and unambiguous" words—St. Jude Medical—their "plainly expressed intent," it would erase those words from the contract altogether. *See M&G Polymers USA*, 135 S.Ct. at 933

("Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.") (internal quotations omitted.)

In his motion, Hackett alleges that at some point during his employment, the Daig Division of St. Jude ceased to exist. Accepting that as true, the Court notes that Hackett continued to work for St. Jude under the terms of that same 1999 contract. This fact further supports a finding that the parties' intent, in 1999, was to contract for employment not for merely the division of Daig, but for the corporation to which that division belonged, St. Jude.

And, the Court concludes that any confusion surrounding the contract amendment of 2008 is immaterial to the existence and enforceability of the 1999 contract. The Court makes no judgment on who filled in the date on that amendment or whether the date was filled in accurately; it simply does not matter. The content of the amendment was confined to one topic: a new product line. (Dkt. 4, Ex. 1). The amendment otherwise explicitly retained the provisions of the 1999 contract. (Id.) In Hackett's best case, incorrect or missing dates on that amendment would only serve to invalidate the amendment, not the 1999 contract—especially in light of the latter's severability clause. (Dkt. 4, Ex. 1, ¶ 10: "<u>Severability.</u> If any provisions of this Agreement shall, for any reason, be adjudged to be void, invalid or unenforceable by a court of law, the remainder of this Agreement shall nonetheless continue and remain in full force and effect."). *See Cellco Partnership v. Hatch*, 431 F.3d 1077, 1083 (8th Cir. 2005); and *Pilato v. Edge Investors, L.P.*, 609 F.Supp.2d 1301, 1309 (S.D. Fla. 2009) (finding that severability clauses are governed by

state law and concluding, respectively, that Florida and Minnesota law favor their enforcement).

For these reasons, the Court is convinced that Hackett and St. Jude entered into a valid employment contract in 1999 and that the terms of that contract were still in effect in 2014 when Hackett was terminated. Consequently, the forum-selection clause in that contract is "prima facie valid and should be enforced unless enforcement is shown by [Hackett] to be unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

Here, Hackett cannot succeed. Indeed, having rested his relief on a claim that his employment contract is invalid, Hackett has not even tried to argue that his case meets one of the four scenarios that qualify as unreasonable under Eleventh Circuit precedent. *See Krenkel*, 579 F.3d at 1281. The Court, therefore, sees no reason to do a detailed comparison. It will instead simply note that, in carefully reviewing the record, the Court finds no evidence to support that one of those scenarios has been met.

Hackett and St. Jude entered into a valid contract. The forum-selection clause in that contract is reasonable. Transferring the action consistent with that clause is appropriate. *Atlantic Marine Contr. Co.*, 134 S.Ct. at 580.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion to Dismiss and Alternatively to Transfer (Dkt. 4) is **GRANTED** to the extent that it seeks transfer to the United States District Court for the District of Minnesota.

2. The Clerk of the Court shall transfer this case to the United States District Court for the District of Minnesota for all further proceedings.

3. Any remaining pending motions shall remain pending so the Clerk may transfer them to the District of Minnesota for ruling.

**DONE** and **ORDERED** in Tampa, Florida, this 6th day of October, 2015.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2015\15-cv-1971 Transfer.docx